UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X        **FOR PUBLICATION**

In re:                                                                  :

                                                                        :

ARIEH J. WHITE and GEMMA S. WHITE,          :          Chapter 7

                                                                        :          Case No.: 12-11847 (SMB)

                    Debtors.                                  :

-----------------------------------------------------------------X

### MEMORANDUM DECISION AND ORDER DENYING
### MOTION TO LIFT THE AUTOMATIC STAY

**A P P E A R A N C E S :**

REICH, REICH & REICH, P.C.
Attorneys for the Debtors
235 Main Street, Suite 450
White Plains, NY 10601

       Lawrence R. Reich, Esq.
       Nicholas A. Pasalides, Esq.
          Of Counsel

GOLD BENES, LLP
Attorney for Beach Lane Management, Inc.
1854 Bellmore Avenue
Bellmore, NY 11710

       Melissa B. Levine, Esq.
          Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

       Beach Lane Management Inc. ("Beach Lane") has moved to "annul" the automatic stay

to enforce a pre-petition state court contempt order and warrant of arrest against the debtor Arieh

White ("White").  For the reasons set forth below, the motion is denied without prejudice.

## BACKGROUND

On June 6, 2007, the New York State Supreme Court entered a judgment in the amount of $108,442.00 against White and his wife, Gemma, in favor of Beach Lane (the "Judgment").[1] On or about March 8, 2011, Beach Lane served White with an Information Subpoena with Questions[2] and a Subpoena *Duces Tecum* and *Ad Testificandum*[3] (collectively, the "Subpoenas") requiring White, *inter alia*, to answer written questions under oath regarding the location of his assets within seven days of their receipt and appear for a deposition on May 4, 2011.  White failed to comply with the Subpoenas.  Beach Lane then moved before the state court to compel compliance, and by order dated September 9, 2011 (the "Compliance Order"),[4] the state court ordered White to comply within 30 days of the service of the Notice of Entry and a copy of the Subpoenas previously served on him.  The Compliance Order stated that if White failed to respond to the Subpoenas and appear for a deposition by the specified date, Beach Lane could move for an order pursuant to New York Civil Practice Law and Rules ("CPLR") § 2308 and New York Judiciary Law ("Judiciary Law") § 753 for the issuance of a warrant directing the Sheriff to compel him to comply.

---

[1]      A copy of the Judgment is annexed to Beach Lane's proof of claim which, in turn, is attached as Exhibit 1 to the *Declaration of Attorney Melissa Levine in Support of Beach Lane's Motion, Pursuant to 11 U.S.C. § 362 for Relief from and to Annul the Automatic Stay as Against Arieh White*, dated June 19, 2012 ("*Levine Declaration*") (ECF Doc. # 11).

[2]      A copy of the Information Subpoena with Questions, dated Mar. 8 2011 is annexed as Exhibit 3 to the *Levine Declaration*.

[3]      A copy of the Subpoena *Duces Tecum* and *Ad Testificandum*, dated Mar.8, 2012is annexed as Exhibit 5 to the *Levine Declaration*.

[4]      A copy of the Compliance Order is attached as Exhibit B to the *Affirmation in Opposition to Creditor Beach Lane Management Inc's Motion Seeking Relief from the Automatic Stay*, dated June 29, 2012 ("*Opposition Affirmation*") (ECF Doc. # 19).

Beach Lane duly served the Notice of Entry and Subpoenas on White, (*see Levine Declaration*, Ex. 8), and pursuant to the Compliance Order, White was required to comply by early November 2011.  White ignored the Compliance Order, and Beach Lane moved to hold him in contempt.  (*See Order to Show Cause to Compel Compliance with Subpoena and to Punish for Contempt*, dated Mar. 15, 2012, attached as Exhibit 9 to the *Levine Declaration*.)  After discussing the elements of "civil contempt," the state court entered an order dated April 24, 2012 (the "Contempt Order"),[5] that granted Beach Lane's motion, ordered the issuance of a warrant "directing the Sheriff to compel Defendant Ari White's compliance," and directed "an assessment of damages against defendant Ari White."  Beach Lane subsequently filed an affirmation with the state court requesting attorney's fees and costs in the aggregate sum of $3,089.71.  (*See Attorney's Affirmation Regarding Fees and Costs*, dated Apr. 26, 2012, at ¶ 2.) [6]

A few days later, on May 2, 2012, White and his wife filed a joint petition for chapter 7 relief.  The next day, Beach Lane filed a proof of claim in the sum of $156,304.83—the amount of the Judgment, plus pre-petition interest.  On June 21, 2012, Beach Lane filed the pending motion.  Although styled a motion to "annul" the automatic stay, Beach Lane actually seeks to lift the stay prospectively to enforce the damages and arrest provisions of the Contempt Order.[7]

---

[5]    A copy of the Contempt Order is annexed as Exhibit 2 to the *Levine Declaration*.

[6]    A copy of the *Attorney's Affirmation Regarding Fees and Costs*, dated Apr. 26, 2012,  is annexed as Exhibit 10 to the *Levine Declaration*.

[7]    Annulment of the stay provides retroactive relief to validate an otherwise void act committed in violation of the automatic stay.  *See In re Best Payphones, Inc.*, 279 B.R. 92, 98 (Bankr. S.D.N.Y. 2002).  Here, Beach Lane appears to be seeking only prospective relief.  Although its motion refers to a post-petition warrant of arrest, (*see Levine Declaration* at ¶ 7), the supporting cite is to the pre-petition Contempt Order.  There is no evidence that a warrant of arrest issued post-petition.

White opposed the motion arguing that the purpose of the Contempt Order was to facilitate the collection of the Judgment, and there was no evidence that the Contempt Order was designed to "uphold the dignity of the State Court." (*See Opposition Affirmation* at ¶¶ 8-11.)  In addition, the Contempt Order was moot.  The Contempt Order was intended to compel compliance with the Subpoenas, and Beach Lane could obtain the same information pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. (*See id*. at ¶ 13.) [8]

In reply, Beach Lane modified its request for relief.  It now sought an order (1) allowing the state court to assess damages for White's "total lack of respect for four mandates of the State Court," and (2) directing White to answer the Information Subpoena and appear for a deposition in accordance with Federal Bankruptcy Rule 2004.  (*Reply Declaration of Attorney Melissa Levine in Support of Beach Lane's Motion, Pursuant to 11 U.S.C. § 362 for Relief from and to Annul the Automatic Stay as Against Arieh White*, dated July 6, 2012, ¶¶ 9, 11 ("*Reply Declaration*") (ECF Doc. # 20).)  Beach Lane also argued, for the first time, that the automatic stay did not apply to the paragraph of the Contempt Order calling for the assessment of damages because the state court held White in criminal as opposed to civil contempt, and damages need to be assessed for White's "contumacious" behavior.  (*Id*. at ¶¶ 8-9.)

### DISCUSSION

The filing of a bankruptcy petition triggers the automatic stay that halts most pre-petition litigation against a debtor.  *See* 11 U.S.C. §362(a)(1).  The stay does not, however, suspend the commencement or continuation of criminal proceedings against a debtor.  *See* 11 U.S.C. §362(b)(1).  Generally, actions for civil contempt are considered private collection devices

---

[8]       The Court subsequently granted Beach Lane's Rule 2004 application.  (*See Order Granting Beach Lane Management's Motion Pursuant to Fed. R. Bankr. P. §2004*, dated July 23, 2012 ("2004 Order") (ECF Doc. #26).)

subject to the automatic stay while criminal contempt proceedings are not.  *See In re Newman*,

196 B.R. 700, 704 (Bankr. S.D.N.Y. 1996).  The distinction between civil and criminal contempt

lies in the rights that are being vindicated and the level of willfulness of the conduct:

> Civil contempt has as its aim the vindication of a private right of a
> party to litigation and any penalty imposed upon the contemnor is
> designed to compensate the injured private party for the loss of or
> interference with that right ( *State of New York v. Unique Ideas,* 44
> N.Y.2d 345, 405 N.Y.S.2d 656, 376 N.E.2d 1301).  Criminal
> contempt, on the other hand, involves vindication of an offense
> against public justice and is utilized to protect the dignity of the
> judicial system and to compel respect for its mandates (*King v.
> Barnes,* 113 N.Y. 476, 21 N.E. 182).  Inasmuch as the objective is
> deterrence of disobedience of judicial mandates, the penalty
> imposed is punitive in nature (*State of New York v. Unique Ideas,
> supra*).  Although the line between the two types of contempt may
> be difficult to draw in a given case, and the same act may be
> punishable as both a civil and a criminal contempt, the element
> which serves to elevate a contempt from civil to criminal is the
> level of willfulness with which the conduct is carried out (compare
> Judiciary Law, § 753, subd. A, par. 3 [civil contempt], with *id.,* §
> 750, subd. A, par. 3 [criminal contempt]; see, e.g., *Sentry Armored
> Courier Corp. v. New York City Off-Track Betting Corp.,* 75
> A.D.2d 344, 429 N.Y.S.2d 902).

*McCormick v. Axelrod*, 453 N.E.2d 508, 512 (N.Y.), *amended by,* 454 N.E.2d 1314 (N.Y. 1983);

*accord McCain v. Dinkin*s, 639 N.E.2d 1132, 1137 (N.Y. 1994).

It is not always easy to distinguish between the two forms of contempt, and both involve

some form of punishment for contumacious disregard of a state court order.  Nevertheless, Beach

Lane's belated argument that the stay does not apply because White's contempt was criminal

rather than civil is not supported by the record and lacks merit.  The Compliance Order

authorized Beach Lane to seek an order of contempt pursuant to CPLR § 2308[9] and Judiciary

---

[9]    N.Y. C.P.L.R. § 2308 (MᴄKɪɴɴᴇʏ 2008) provides in pertinent part:

> (a) Judicial. Failure to comply with a subpoena issued by a judge, clerk or
> officer of the court shall be punishable as a contempt of court. If the witness is a
> party the court may also strike his or her pleadings. A subpoenaed person shall

Law § 753.[10]  The former allows a civil litigant aggrieved by the disobedience of a judicial or

non-judicial subpoena to seek an order of contempt.  In either case, the contemnor is liable to the

person on whose behalf the subpoena was issued for penalties and damages caused by the

---

also be liable to the person on whose behalf the subpoena was issued for a
penalty not exceeding one hundred fifty dollars and damages sustained by
reason of the failure to comply. A court may issue a warrant directing a sheriff
to bring the witness into court. If a person so subpoenaed attends or is brought
into court, but refuses without reasonable cause to be examined, or to answer a
legal and pertinent question, or to produce a book, paper or other thing which he
or she was directed to produce by the subpoena, or to subscribe his or her
deposition after it has been correctly reduced to writing, the court may forthwith
issue a warrant directed to the sheriff of the county where the person is,
committing him or her to jail, there to remain until he or she submits to do the
act which he or she was so required to do or is discharged according to law.
Such a warrant of commitment shall specify particularly the cause of the
commitment and, if the witness is committed for refusing to answer a question,
the question shall be inserted in the warrant.

(b) Non-judicial. (1) Unless otherwise provided, if a person fails to comply with
a subpoena which is not returnable in a court, the issuer or the person on whose
behalf the subpoena was issued may move in the supreme court to compel
compliance. If the court finds that the subpoena was authorized, it shall order
compliance and may impose costs not exceeding fifty dollars. A subpoenaed
person shall also be liable to the person on whose behalf the subpoena was
issued for a penalty not exceeding fifty dollars and damages sustained by reason
of the failure to comply. A court may issue a warrant directing a sheriff to bring
the witness before the person or body requiring his appearance. If a person so
subpoenaed attends or is brought before such person or body, but refuses
without reasonable cause to be examined, or to answer a legal and pertinent
question, or to produce a book, paper or other thing which he was directed to
produce by the subpoena, or to subscribe his deposition after it has been
correctly reduced to writing, the court, upon proof by affidavit, may issue a
warrant directed to the sheriff of the county where the person is, committing him
to jail, there to remain until he submits to do the act which he was so required to
do or is discharged according to law. Such a warrant of commitment shall
specify particularly the cause of the commitment and, if the witness is
committed for refusing to answer a question, the question shall be inserted in the
warrant.

[10]    N.Y. Judiciary Law § 753 (McKinney 2003)  states in pertinent part:

A. A court of record has power to punish, by fine and imprisonment, or either, a
neglect or violation of duty, or other misconduct, by which a right or remedy of
a party to a civil action or special proceeding, pending in the court may be
defeated, impaired, impeded, or prejudiced, in any of the following cases:

. . .

5. A person subpoenaed as a witness, for refusing or neglecting to obey the
subpoena, or to attend, or to be sworn, or to answer as a witness.

contemnor's non-compliance.  In addition, the court may issue a warrant directing the sheriff to

commit the contemnor until he submits to do the act that he is required to do or is discharged

according to law.  Thus, the remedy under CPLR § 2308 is purely civil.  It is designed to

compensate the aggrieved person and coerce compliance through confinement.  The contemnor

holds the keys to his jail cell, a sure sign that the contempt is civil.  *See Ochoa v. United States*,

819 F.2d 366, 369 (2d Cir. 1987) ("[C]ivil contemnors 'are imprisoned only until they comply

with the orders of the court.... They carry the keys of their prison in their own pockets.'")

(quoting *In re Nevitt,* 117 F. 448, 461 (8th Cir. 1902)); *Rubackin v. Rubackin*, 875 N.Y.S.2d 90,

94 (N.Y. App. Div. 2009) ("[T]he civil contemnor is said to hold the keys to the prison.").

Similarly, Judiciary Law § 753 authorizes the court to punish for civil contempt, as its

title suggests ("Power of courts to punish for civil contempts").  The court may award actual

damages, but in the absence of actual damages, the court may impose a fine, not exceeding the

amount of the complainant's costs and expenses, plus $250.00.  The evidentiary standard is

"clear and convincing," *Miller v. Miller*, 877 N.Y.S.2d 148, 149 (N.Y. App. Div. 2009);

*Automated Waste Disposal, Inc. v. Mid-Hudson Waste, Inc.*, 857 N.Y.S.2d 229, 231 (N.Y. App.

Div. 2008), and does not require a finding of "willfulness."  *See Great Neck Pennysaver, Inc. v.

Cent. Nassau Publ'ns, Inc.*, 409 N.Y.S.2d 544, 545-46 (N.Y. App. Div. 1978).  In contrast,

Judiciary Law § 750 empowers the court to punish criminal contempts, and requires proof

beyond a reasonable doubt that the contemnor has *willfully* disobeyed a court order.  *Garry v.

Garry*, 467 N.Y.S.2d 175, 178 (N.Y. Sup. Ct. 1983).

The Contempt Order, in this regard, makes it expressly clear that the state court was

adjudicating a civil contempt.  It specifically refers to civil contempt, applies the "clear and

convincing" evidentiary standard, and does not include a finding of "willfulness."  "In the

absence of a specification that the contempt was criminal and without a finding of willful

disobedience, the alleged contempt must be considered to have been civil in nature." *Sentry*

*Armored Courier Corp. v. New York City Off-Track Betting Corp.*, 429 N.Y.S.2d 902, 903 (N.Y.

App. Div. 1980).  Moreover, the Contempt Order authorized the issuance of a warrant to compel

White's compliance which meant that the Sheriff would commit White until he complied with

the Subpoenas or was relieved of the obligation to do so.  Hence, White held the keys to his jail

cell and could purge himself of contempt through compliance.  Lastly, the state court authorized

an assessment of damages.  Although the Contempt Order does not say whose damages, it

obviously refers to Beach Lane's, as evidenced by its submission of an affirmation listing the

costs and attorneys' fees incurred in connection with the contempt motion.  Accordingly, the

Contempt Order involved civil contempt.

This conclusion does not end the inquiry.  Courts have recognized a non-statutory

exception to the automatic stay where the goal of a civil contempt proceeding is to vindicate the

dignity of the court rather than collect a pre-petition claim or obtain property of the estate.  *See*

*e.g., Int'l Distribution Ctrs., Inc. v. Walsh Trucking Co.*, 62 B.R. 723, 730 (S.D.N.Y. 1986);

*Rudaw/Empirical Software Prods. Ltd. v. Elgar Elecs. Corp. (In re RudawEmpirical Software*

*Prods. Ltd.)*, 83 B.R. 241, 247 (Bankr. S.D.N.Y. 1988); *In re Cohoes Indus. Terminal, Inc.,* 62

B.R. 369, 377-78 (Bankr. S.D.N.Y. 1986), *aff'd*, 70 B.R. 214 (S.D.N.Y.), *aff'd without op.*, 831

F.2d 283 (2d Cir. 1987).  As noted, however, to some extent every contemptuous act involves an

affront to the dignity of a court and every punishment meted out for contempt vindicates that

court's dignity.  Yet many if not most civil contempt proceedings are stayed, and a broad

construction of the exception would swallow up the rule.   Ultimately, the question of whether

the stay applies or stay relief is warranted is very fact specific, and decisions recognizing a non-

8

statutory exception or granting stay relief to prosecute a contempt motion "are useful far more
for general guidance than as binding precedents." *Sonnax Indus. Inc. v. Tri Component Prods.
Corp.* (*In re Sonnax Indus. Inc.*), 907 F.2d 1280, 1288 (2d Cir. 1990).

The Contempt Order granted Beach Lane two specific forms of relief: (1) liquidate its
damages resulting from White's disobedience of the Subpoenas; and (2) compel White's
compliance with the Subpoenas, and if necessary, imprison him until he does so.  Asking to
enforce the former against White at this time is clearly an effort to continue a litigation that was
commenced pre-petition and to recover a pre-petition claim for damages.  The latter relief serves
no purpose except to enforce the collection of the Judgment which is stayed, and Beach Lane no
longer seeks White's arrest.  Furthermore, Beach Lane can get the same information about
White's assets pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.  The Court
has already authorized it to do so, (*see 2004 Order*"), eliminating the need for the state court to
compel White to comply with the Subpoenas.[11]

The conclusion that the automatic stay applies to Beach Lane's attempt to enforce the
Contempt Order brings us in a roundabout manner to Beach Lane's original motion for stay
relief.  A motion for relief from the automatic stay to continue pre-petition litigation is governed
by the Second Circuit's decision in *Sonnax Indus. Inc.*, 907 F.2d 1280.  Beach Lane ignored this
controlling authority, and did not engage in the fact-driven analysis that it requires.  As a result

---

[11]    Beach Lane asks the Court to direct White to comply with the Subpoenas as part of the 2004 Order.  (*Reply
Declaration* at ¶ 11).  The 2004 Order empowers Beach Lane to obtain the same information it sought in through the
Subpoenas.  Thus, there is no reason to also order White to comply with the Subpoenas; Beach Lane can simply
pose the relevant questions to White during the Rule 2004 examination.

of these omissions, Beach Lane has failed to satisfy its initial burden of showing cause. *See id.*

at 1285. Accordingly, its motion for relief from the automatic stay is denied without prejudice.

So ordered.

Dated: New York, New York
September 27, 2012

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge